AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

> **LODGED**
> CLERK, U.S. DISTRICT COURT
> **9/9/2021**
> CENTRAL DISTRICT OF CALIFORNIA
> BY: ___ *fb* ___ DEPUTY

United States of America

v.

KIMBERLY SILVA,

Defendant(s)

Case No.   2:21-mj-04205-duty

> **FILED**
> CLERK, U.S. DISTRICT COURT
> **Sept. 9, 2021**
> CENTRAL DISTRICT OF CALIFORNIA
> BY: ___ ch ___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 9, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Dominick Canty*
*Complainant's signature*

_____
Dominick Canty, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   September 9, 2021

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Paul Abrams, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sara Milstein (x8611)

## **AFFIDAVIT**

I, Dominick Canty, being duly sworn, declare and state as follows:

## I.  **PURPOSE OF AFFIDAVIT**

1.  This affidavit is made in support of a criminal complaint and arrest warrant against KIMBERLY SILVA ("SILVA") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

2.  This affidavit is also made in support of an application for a warrant to search the following digital device in the custody of the Los Angeles Sheriff's Department ("LASD"), in Compton, California, as described more fully in Attachment A:

a.  An LG cell phone with serial number 356284104316211 (the "SUBJECT DEVICE").

3.  The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm or Ammunition), 1959(a) (Violent Crime in Aid of Racketeering), and 924(c) (Use of a Firearm in Furtherance of a Crime of Violence) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including members of the LASD – Operation Safe Streets.  This affidavit is intended to show merely that there

is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.    I am a Special Agent with the FBI and have been so employed since September 15, 2019.  I am currently assigned to the Violent Crimes Squad and the Long Beach Resident Agency. During my previous training at the FBI Academy, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.  In my current role as a Special Agent, I have experience in investigations involving gang violence, drug trafficking, child pornography, extortion, and homicide.  I have had formal training in case management, evidence collection and source handling.  Prior to being employed by the FBI as a Special Agent, I was employed by the FBI as an Intelligence Analyst for approximately two years, where I have had experience performing analysis for investigations involving drug trafficking and transnational organized crime.  I have also consulted with other more experienced Special Agents and law enforcement officers on this and other investigations.

### III.  **SUMMARY OF PROBABLE CAUSE**

6.    In executing a state search warrant on SILVA and her residence, law enforcement found 83 total rounds of ammunition and the SUBJECT DEVICE inside SILVA's bedroom.  SILVA, a Santana Blocc Compton Crips ("SBCC") gang member who is under investigation for her involvement in an April 2021 shooting, is a convicted felon who is prohibited from possessing ammunition. In a post-<u>Miranda</u> interview, SILVA said that the ammunition belonged to her and said she knew she was not allowed to have it because she is a convicted felon.

### IV. **STATEMENT OF PROBABLE CAUSE**

7.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    SILVA is a Suspect in a Shooting**

8.    On September 7, 2021, the Honorable John J. Lonergan Jr., Magistrate Judge of the Superior Court of the State of California, issued a warrant to search SILVA's residence and person for evidence relating to a shooting.  The warrant is attached hereto as Exhibit 1 and incorporated herein by reference.

9.    As provided in greater detail in Exhibit 1, on April 19, 2021, a male minor was shot near a shopping plaza in Compton, California, in the heart of territory claimed by the SBCC gang.  Businesses in the shopping plaza had security cameras that captured the incident.  The footage showed SILVA, an SBCC member, and another person firing guns across the

shopping plaza's parking lot and in the direction of a male who appeared to take cover behind a metal fence.  SILVA's face and body were visible in the footage.  The male was ultimately struck by one of the bullets and was later taken to a hospital, where he survived his wound.

      **B.**    **Search Warrant at SILVA's Residence**

    10.  On September 9, 2021, LASD executed the search warrant in Exhibit 1.  They found SILVA present at her residence along with members of her family.

    11.  According to SILVA, SILVA's minor sister, and SILVA's mother, SILVA shares a bedroom with her minor sister.  SILVA keeps her belongings, including her identification, social security card, and passport inside of the bedroom.

    12.  LASD found the following inside SILVA's bedroom, in substance and in part:

        a.  Thirty-one 9mm rounds of ammunition inside of a magazine, found inside of a black bag in the closet;

        b.  Fifty-two loose 9mm rounds of ammunition in the black bag and in a red blanket close to the black bag, also in the closet;

        c.  An empty .45 caliber magazine, found inside of a black bag in the closet; and

        d.  The SUBJECT DEVICE on top of the bed.

    13.  LASD deputies asked SILVA's minor sister if any of the ammunition or magazines belonged to her.  SILVA's minor sister said no.

14.   LASD deputies asked SILVA's minor sister if the SUBJECT DEVICE belonged to her.  SILVA's minor sister said that the SUBJECT DEVICE belonged to SILVA.

**C.   SILVA's Statements**

15.   I was present when SILVA was read her <u>Miranda</u> rights. During the interview, SILVA said the following, in substance and in part:

      a.   SILVA shares a bedroom with her younger sister;

      b.   The ammunition and magazines belong to SILVA; and

      c.   SILVA knows she is a convicted felon and is not allowed to possess firearms or ammunition.

16.   SILVA declined to speak about the shooting.

**D.   Criminal History**

17.   I have reviewed criminal history and conviction documentation for SILVA.  From my review, I know that SILVA was convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

      a.   On or about August 6, 2019, a violation of California Penal Code section 29800(a)(1) (Firearm Access Violation), in the Superior Court for the State of California, County of Los Angeles, Case Number COMTA14971101; and

      b.   On or about February 27, 2019, a violation of California Penal Code section 25850(a) (Carrying a Loaded Firearm), in the Superior Court for the State of California, County of Los Angeles, Case Number COMTA14798801.

**E.    Interstate Nexus**

18.   From my review of the LASD property report, I know
that some of the ammunition seized from SILVA's bedroom was
manufactured by CCI.  Based on my training and experience, as
well as my review of CCI's website, I believe that CCI is based
in Lewiston, Idaho and manufactures its ammunition there.  I
therefore believe that the ammunition seized from SILVA traveled
in interstate commerce because it was recovered in the Central
District of California after having been manufactured outside of
California.

## V.  TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

19.   From my training, personal experience, and the
collective experiences related to me by other law enforcement
officers who conduct who conduct firearms investigations, I am
aware of the following:

a.   Persons who possess, purchase, sell, or use
firearms generally maintain records of their firearm
transactions as items of value and usually keep them in their
residence, or in places that are readily accessible, and under
their physical control, such in their digital devices.  It has
been my experience that prohibited individuals who own firearms
illegally will keep the contact information of the individual
who is supplying firearms to prohibited individuals or other
individuals involved in criminal activities for future purchases
or referrals.  Such information is also kept on digital devices.

b.   Many people also keep mementos of their firearms,
including digital photographs or recordings of themselves

possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c.    Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

d.    Those who fire, brandish, or otherwise use firearms tend to keep mementos of those firearms and their use of the firearms on their digital devices.  These mementos may take the form of photographs or videos.  I also know that people who use firearms tend to discuss their use of those firearms with others using their digital devices.  These discussions may involve bragging about or recounting the events leading up to and during the firearm use.  This is particularly true where

firearms have been used to further gang activity because gang members tend to strive for credit (often called a "trophy") for putting in "work" for the gang.

        e.    Likewise, based on my training and experience as well as my involvement in this investigation and others involving SBCC, I know that gang members in general and SBCC members, in particular, often keep evidence and indicia of gang membership on their cell phones.  They use their cell phones to talk about gang business, gun and drug transactions and transfers, to organize meetings, and to talk about past and future work done on behalf of the gang.

### VI. <u>TRAINING AND EXPERIENCE ON DIGITAL DEVICES</u>

    20.  As used herein, the term "digital device" includes the SUBJECT DEVICE.

    21.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

        a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are

replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously

develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

22.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

23.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.  Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical

feature matches one the user has stored on the device.  To
unlock a device enabled with a fingerprint unlock function, a
user places one or more of the user's fingers on a device's
fingerprint scanner for approximately one second.  To unlock a
device enabled with a facial, retina, or iris recognition
function, the user holds the device in front of the user's face
with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock
function will not unlock a device even if enabled, such as when
a device has been restarted or inactive, has not been unlocked
for a certain period of time (often 48 hours or less), or after
a certain number of unsuccessful unlock attempts.  Thus, the
opportunity to use a biometric unlock function even on an
enabled device may exist for only a short time.  I do not know
the passcodes of the devices likely to be found in the search.

c.   The person who is in possession of a device or
has the device among his or her belongings is likely a user of
the device.  Thus, the warrant I am applying for would permit
law enforcement personnel to, with respect to any device that
appears to have a biometric sensor and falls within the scope of
the warrant: (1) depress SILVA's thumb- and/or fingers on the
device(s); and (2) hold the device(s) in front of SILVA's face
with his or her eyes open to activate the facial-, iris-, and/or
retina-recognition feature.

24.  Other than what has been described herein, to my
knowledge, the United States has not attempted to obtain this
data by other means.

## VII. <u>CONCLUSION</u>

25.  For all of the reasons described above, there is probable cause to believe that SILVA has committed a violation of a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).  There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ___9th___ day of
__September__, 2021.

_____
THE HON. PAUL ABRAMS
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following digital device (the "SUBJECT DEVICE"), seized on September 9, 2021 and currently maintained in the custody of the Los Angeles Sheriff's Department, in Compton, California:

1.   An LG cell phone with serial number 356284104316211.

**ATTACHMENT B**

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm and Ammunition) 1959(a) (Violent Crime in Aid of Racketeering), and 924(c) (Use of a Firearm in Furtherance of a Crime of Violence) (the "Subject Offenses"), namely:

a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

d.    Records, documents, programs, applications, materials, or conversations relating to the sale or purchase of guns or ammunition, including correspondence, receipts, records, and documents noting prices or times when guns or ammunition were bought, sold, or otherwise distributed;

e.    Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of guns or ammunition;

f.    Evidence of gang membership, including photographs, videos, or images displaying gang hand signs, messages referring to the Santana Blocc Compton Crips, membership in the Santana Blocc Compton Crips, and activity by the Santana Blocc Compton Crips;

g.    Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

h.    Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offense/s, and forensic copies thereof.

i.    With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

iii

browsing history, user profiles, e-mail, e-mail contacts, chat
and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of
software that would allow others to control the device, such as
viruses, Trojan horses, and other forms of malicious software,
as well as evidence of the presence or absence of security
software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and
associated data) that are designed to eliminate data from the
device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, and other access
devices that may be necessary to access the device;

vii. applications, utility programs, compilers,
interpreters, or other software, as well as documentation and
manuals, that may be necessary to access the device or to
conduct a forensic examination of it;

viii.    records of or information about
Internet Protocol addresses used by the device;

ix.   records of or information about the device's
Internet activity, including firewall logs, caches, browser
history and cookies, "bookmarked" or "favorite" web pages,
search terms that the user entered into any Internet search
engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents,"
"programs," "applications," and "materials" include records,

documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

II.   **SEARCH PROCEDURE FOR DIGITAL DEVICE**

3.   In searching the SUBJECT DEVICE (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.   The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.   The search team shall complete the search of the SUBJECT DEVICE as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device beyond this 120-day period without obtaining an extension of time order from the Court.

d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine

whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e.  The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g.  If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

vi

h.   If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.   The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.   After the completion of the search of the SUBJECT DEVICE, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

4.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5.    During the execution of this search warrant, law enforcement is permitted to (1) depress SILVA's thumb- and/or fingers onto the fingerprint sensor of the SUBJECT DEVICE (only if the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of SILVA's face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

6.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

# EXHIBIT 1

LASD File #: 021-04476-2823-051                                    SW NO._____

# SUPERIOR COURT OF CALIFORNIA
## County of Los Angeles

## SEARCH WARRANT



**Detective Arthur Garcia #522452** swears under oath that the facts expressed by him in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he has probable cause to believe and does believe that the articles, property, electronic communications, and data described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the location(s) set forth below. Wherefore, Affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)

**SEALING ORDER REQUESTED:**     YES   X   NO
**NIGHT SEARCH REQUESTED:**   X   YES   ___ NO

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF LOS ANGELES:** proof by affidavit, having been this day made before me by **Detective Arthur Garcia**, finds that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by **X** (s) in that:

____   When the property was stolen or embezzled [§1524(a)(1) Penal Code];

_X_   When the property or things were used as the means of committing a felony [§1524(a)(2) Penal Code];

_X_   When the property or things to be seized consist of an item or constitute evidence that tends to show that a felony has been committed, or tends to show that a particular person has committed a felony [§1524(a)(4) Penal Code];

_X_   When the property or things are in the possession of any person with the intent to use them as a means for committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery [§1524(a)(3) Penal Code];

____   There is a warrant to arrest a person [§1524(a)(6) Penal Code];

____   When a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

_X_   Will assist in locating an individual who has committed or is committing a felony [§1524(a)(12) Penal Code];

## YOU ARE THEREFORE COMMANDED TO SEARCH:

 See Attachments 1 through 2

## FOR THE FOLLOWING PROPERTY:
See Attachment 3

Rev. 01-11-16 *82

LASD File #: 021-04476-2823-051                                    SW NO._____

**SEALING ORDER:** Pending further order of the Court, this Search Warrant and all accompanying documents shall not become a public record and will be sealed and kept in the custody of the **Los Angeles County Superior Court,** and not to be made part of the public record until further order of this court or any competent court.

___  Official Information (Ca. Evidence Code § 1040)    ___  Informant Protection (Ca. Evidence Code § 1041)

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this Court, at the courthouse of this Court.  This **Search Warrant** and **Affidavit,** and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this ___7___ day of September, **2021, at** _2:70_ **A.M.** / **P.M.** Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____          SEALING ORDER APPROVED:      YES  X  NO
**(Signature of Magistrate)**                                 NIGHT SEARCH APPROVED:  X  YES  ___  NO

Judge of the Superior Court of California, County of Los Angeles, ___Compton___ Court, Dept / Div _A_ ,

_____J. C._____ Judicial District.

**JOHN J. LONERGAN JR.**
**(Magistrate's Printed Name)**



Rev. 01-11-16 *82

LASD File #: 021-04476-2823-051                                              SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
## SEARCH WARRANT AND AFFIDAVIT
### (Attachment 1: Location)

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**917 East Pine Street, Compton, California 90221** further described as a single-story residence, with white stucco, white trim and red tile roof. The residence is individually numbered.  The target location has the numbers "**917**" mounted on a wooden beam located directly above the front door. The front door to the location faces south and has a white security screen door.  The front windows have black security bars.

In the above location, this includes any attics, rooms, basements, closets, cupboards, drawers, safes, lock boxes, and other parts therein; the surrounding grounds and any garages, sheds, trash containers, out buildings, and storage rooms therein; any vehicles parked on the property or in the street in front of or adjacent to the location, provided that said vehicles can be specifically connected to the occupants of the suspect residence, or show the suspects have control of said vehicles to be searched prior to searching the vehicles.

LASD File #: 021-04476-2823-051                                    SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

## SEARCH WARRANT AND AFFIDAVIT

### (Attachment 2: Persons/ Property)


**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**The person(s) of:**

**Location # 1**

**Silva, Kimberly - Date of Birth: 10-19-2000, Female Hispanic, Brown/Brown, 5'04", 125lbs and CII: 37159131, MAIN: 33681111, FBI: 6N3CRJ064, CDL: Y4283940**


And any person(s) at the residence who could conceal upon their person any firearm or dangerous weapons.

Rev. 01-11-16 *82

LASD File #: 021-04476-2823-051

SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

### SEARCH WARRANT AND AFFIDAVIT

### (Attachment 3: Property/ Evidence to be seized)

**FOR THE FOLLOWING:**

**Any** firearm capable of firing .45 caliber ammunition.

**Any** .45 ammunition, any expended cartridge casings, any miscellaneous gun pieces, gun cleaning items or kits, holsters, ammunition belts, original box packaging, targets, expended pieces of lead, any photographs of firearms, and any paperwork showing the purchase, storage, disposition, or dominion and control over any guns, and any firearms determined to be illegally possessed.

**Any** clothing worn during the commission of the crime, specifically a grey or white hooded sweater with the word "thrasher" in black lettering, Black sweat pants and all black shoes worn by S/Silva.

**In addition**, the authority to inspect all firearms and/or any instruments, ammunition, weapons, or device(s) listed in SB 1080 Weapons Laws, also defined under California Penal Code sections 33210, 20310, 21110, 20410, 22210, 30210 subsection (a) and (b), 24310, 24410, 20510, 24510, 20610, 21810, 19200 (a), 32900, 22010, 20710, 33215, 22410, 31500, 24610, 24710, 20910, 33600, 32310, 21310, 19200 (b), 21710; and to seize those that are unlawfully possessed by any individual that is prohibited from possessing firearms or ammunition pursuant to Section 29800 (a)(1), 29800 (b), 29805 or subdivision (b) of Section 29815 of the California Penal Code; or Section 8100 or 8103 of the California Welfare and Institutions Code. And any miscellaneous gun pieces, gun cleaning kits, holsters, belts, original packaging, targets, expended pieces of lead, any photographs or firearms, and any paperwork showing the purchase, storage, disposition, or dominion and control over any guns, any ammunition, or any of the above items.

**Any** articles of personal property, tending to establish the identity of persons who have dominion and control over the premises and automobile(s) to be searched, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sales receipts, photographs, vehicle pink slips and vehicle registration.

**Any** evidence of criminal street gang membership or affiliation with any street gangs, including but not limited to the "Santana Blocc Compton Crips" or "SBCC" a criminal street gang or affiliation with any criminal street gang, in order to further establish criminal street gang involvement for the purpose of supportive evidence in the prosecution of said criminal street gang members pursuant to California Penal Code, 186.22., said items to include any drawings, photographs, or miscellaneous writing, or objects, or graffiti depicting gang members names, initials, logos, monikers, slogans or containing any mention of street gang membership, affiliation, activity or identity, any paintings, drawings, photographs or photograph albums, video or digital recordings, depicting vehicles, persons, weapons or locations which may appear upon observation to be relevant on the question of gang membership or affiliation, or which may depict items sought and/or believed to be evidence in the case being investigated with this warrant, or which may depict evidence of any criminal activity, any newspaper clipping attending to relate details or reference to any crime or crimes of violence, and any address books, list or single reference to, addresses or telephones numbers of persons who may later be

LASD File #: 021-04476-2823-051

SW NO._____

determined to belong to or be affiliated with any criminal street gang.  This evidence will assist in the prosecution of the gang enhancement charge pursuant to Penal Code 186.22.

**Any** documentation referencing gang monikers including but not limited to gang members from the Santana Blocc Compton Crips.

**Any** and all surveillance equipment, such as: cameras, monitors, splitters, motion detectors, two-way radios, police scanners, or other equipment consistent with warning occupants of the approach of potential customers, rival drug dealers or Law Enforcement.

**Any** and all cameras, photographic film (developed or undeveloped).

**Any** vehicle(s) parked directly on the property or in the street in front of, nearby or adjacent to the identified location, provided that prior to searching said vehicle(s), can be specifically connected to the suspect(s).

**Any** electronic data storage devices, including, but not limited to, computers, memory cards and thumb drives; also; any and all information stored on said electronic storage devices whether it is stored on an internal, external, removable, temporary or permanent storage device, that will assist in the prosecution of the case being investigated. A search warrant to retrieve any information will be authored, pursuant to Penal Code sections 1524 and 1546, prior to extracting information.

**Any** cellular phone(s) belonging to the suspect mentioned in this affidavit. A search warrant to retrieve any information will be authored, pursuant to Penal Code sections 1524 and 1546, prior to extracting information.

**Evidence to Be Seized but Not Searched**

**Any** cellular phones which belong to S/Silva or were used in the commission of the crime(s) mentioned in this affidavit.

*A warrant to retrieve any information from the above will be authored, pursuant to Penal Code sections 1524 and 1546, prior to extracting information. Advisement of such procedure will also be made prior to retrieving such information for evidentiary value.

Rev. 01-11-16 '82

LASD File #: 021-04476-2823-051                                          SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
## SEARCH WARRANT AND AFFIDAVIT

**AFFIANT STATEMENT:**

Your Affiant, Detective Arthur Garcia, being duly sworn, do hereby state:
I am a sworn peace officer within the meaning of Penal Code section 830.  Your Affiant has been
employed by the Los Angeles County Sheriff's Department for the past 14 years.

For the past 8 years, Your Affiant has been assigned to Compton Station and I am currently assigned
to Operation Safe Streets Bureau (A specialized unit investigating gang violence and gang related
crimes).  During my time at Compton Station, I have investigated hundreds of crimes ranging from
petty theft to murder while working in a patrol and detective capacity.

Your Affiant has been trained in criminal investigations, report writing, field interviewing, and crime
scene management.

In addition to investigating hundreds of crimes over the past 14 years, Your Affiant has also arrested
numerous suspects for crimes ranging from petty theft, drug possession crimes, to rapes and
murders.  Most of the crimes Your Affiant has investigated were committed by gang members,
several of these gang members, Your Affiant has had prior contact or knowledge of.

While assigned to OSS as a gang investigator, I was the affiant on dozens of search warrants which
focused on the investigation of gangs and gang related crimes.  These crimes ranged from theft to
murder, and were committed for the benefit of, on the behalf of, or to promote a criminal street gang.
During these investigations, I have arrested and interviewed numerous suspects involved in
committing homicides, assaults, robberies, weapons and narcotics possession and other violent
crimes.  I have learned, during the course of interviews with violent criminals, how to identify patterns
in criminal behavior.  My investigative experience is further enhanced through the exchange of
information with other deputies from the Los Angeles County Sheriff's Department and local, state
and federal law enforcement agencies.

Your Affiant has received training in the Los Angeles County Sheriff's Department as well as formal
and informal training in the field of crimes against persons, and crimes against property.  Your Affiant
holds an Intermediate Peace Officer Standard of Training certificate and has attended several
seminars in the field of criminal investigation.

Rev  01-11-16 '82

LASD File #: 021-04476-2823-051                                    SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
## SEARCH WARRANT AND AFFIDAVIT
## STATEMENT OF PROBABLE CAUSE

### SUMMARY

On April 19, 2021, at approximately 1418 hours, Compton Patrol Deputies Gomez, S #655224 and Carnochan, E #653518 (Unit 282K1) responded to 2020 North Santa Fe Avenue, Compton, regarding an illegal shooting call.  When they arrived at the location, Deputy Carnochan located two .45 caliber casings along the east sidewalk of Santa Fe Avenue.  He also located seven .45 caliber casings along the south sidewalk of the parking lot at 2020 North Santa Fe Avenue.  Deputy Carnochan also observed two vehicles (California license plate #7MEH039, silver Mercedes E300 and California license plate #5T81611, orange Ford F-150) and two businesses ("El Cielo Restaurant" and "Coin Laundry") had been struck by gunfire.  Deputy Carnochan reviewed security camera footage and observed V/ [victim] spray painting on one of the businesses crossing out already existing graffiti at the indicated address.  A white four door vehicle drives northbound on Santa Fe Avenue towards Pine Street when the vehicle slows down prior to reaching Pine Street.  Two suspects exit the vehicle. One of the suspects who exits the rear passenger side door wearing all black.  S/Silva exits the passenger side front door wearing a grey hooded sweater with black writing and black sweat pants. Both suspects begin to shoot at V/ [victim]  Both suspects re-enter the white four door vehicle, the vehicle continues to drive northbound on Santa Fe Avenue and out of view.  Century Station patrol unit located V/ [victim] who was suffering from a gunshot wound (at 12611 Peach Street in the city of Lynwood).  V/ [victim] was transported to Saint Francis Medical Center and treated for his injuries under Medical Record Number #7700046527073.

While at Saint Francis Medical Center, Deputy Murray #610425, spoke to V/ [victim] regarding the incident, the interview was captured on Deputy Murray's Body worn camera.  V/ [victim] stated he was waiting for his food order to be ready when unknown suspects walked up to him and began shooting at him.  V/ [victim] requested to speak to Deputy Murray off camera.  Off camera, V/ [victim] stated he was shot at by gang members from the "Santana Blocc Compton Crips" because he is an active gang member from the "Barrio Los Padrinos", a rival gang to the "Santana Blocc Compton Crips".  V/ [victim] stated when he heard the gun shots he began to run towards his cousin's truck.  Once inside the truck, V/ [victim] felt sharp pain to his back and realized he had been shot.  Century Station Deputies located V/ [victim] and he was transported to the Hospital. This assault with a deadly weapon incident was documented under LASD URN 021-04476-2823-051.

Rev. 01-11-16 '82

LASD File #: 021-04476-2823-051                                                          SW NO._____

## PROBABLE CAUSE

Based on Your Affiants review of a security camera video obtained during the investigation of this incident, Your Affiants review of law enforcement reports, and my discussions with other law enforcement officers, I am aware of the following:

On April 19, 2021, V/ [victim] was in the plaza located at 2020 North Santa Fe Avenue, in Compton, California, within "SBCC" territory. V/Ramirez, a self-admitted "Barrio Los Padrinos" gang member, was vandalizing the shopping center by spray painting on several walls and the sidewalk. Specifically, V/ [victim] crossed out pre-existing graffiti that read "SBCC", which I recognize to be "SBCC" graffiti, and painting over it with the words "B LOS P 13" which I recognize to be "BLP" graffiti. "BLP" is an "SBCC" rival gang based out of Lynwood, California. After several minutes passed, the video depicts a white sedan with no rear license plate travelling north on North Santa Fe Avenue. As the white sedan approached the shopping center (2020 North Santa Fe Avenue), it stopped just south of the west facing entrance to the parking lot. The white sedan then continued straight, passing the entrance to the parking lot at a slow rate of speed, at which point S/Silva and a male passenger got out of the white sedan. Your Affiant recognized S/Silva from my broader involvement in this investigation. I have reviewed S/Silva's booking photo and California driver's license photograph and compared them to the person in the video, and I believe they are the same person.

S/Silva's face and body are visible in the video. The male accompanying S/Silva in the white sedan (Suspect 2), whose face was partially obscured in the video, has not yet been identified. Both S/Silva and Suspect 2 ran onto the south sidewalk of the parking lot toward V/ [victim] As S/Silva ran towards V/ [victim] she removed a silver handgun from the pocket of her sweatshirt. V/Silva and Suspect 2 then began shooting at V/ [victim] V/ [victim] ran north through the parking lot and out of view of the security camera video. S/Silva and Suspect 2 then stopped shooting and ran back to the white sedan.

V/ [victim] was shot in the heart of "SBCC" territory, and in a location where many walls and storefronts are replete with "SBCC" gang graffiti. Active "SBCC" member S/Silva saw V/ [victim] in "SBCC" territory as he was actively crossing out "SBCC" graffiti and replace it with a "BLP" tagging. The location of V/ [victim] tagging and the events immediately preceding the shooting are significant because this particular location is close to where many "SBCC" gang members live and carry out the gang's regular business of drug trafficking, gun sales, extortion, and other crimes. Shooting V/ [victim] who crossed out "SBCC" graffiti and replaced it with a rival gang's graffiti, would increase S/Silva's position within "SBCC".

Your Affiant conducted a worked up on the potential suspect known to the Affiant as Silva, Kimberly (FH/10-19-2000) a known gang member of the "Santana Blocc Compton Crips" criminal street gang and is known by the moniker "K-3". Your Affiant reviewed S/Silva's most recent booking photograph from August 23, 2020, I observed a tattoo on the left side of S/Silva's face with two letters superimposed over each other. The letters are "T" and "C" which I know to be a reference to "Tana Crips" or the "Santana Block Compton Crips". Only persons who are affiliated with "SBCC" can display an "SBCC" tattoo.

Your Affiant conducted a work up V/ [victim] and confirmed that he was a documented gang member from the Lynwood criminal street gang "Barrio Los Padrinos" (BLP) and is known as "[ ]".

Rev. 01-11-16 '82

LASD File #: 021-04476-2823-051                                          SW NO._____

On April 20, 2021, at approximately 1830 hours, Your Affiant reviewed Kimberly Silva's criminal history and confirmed she is a convicted felon.   She has the following felony convictions: Possession of a concealed loaded firearm, in violation of the California Penal Code 25850(a), case number COMTA14798801 and Possession of a Firearm by a Prohibited Person, in violation of California Penal Code Section 29800(A)(1), case number COMTA14971101.

During the course of the investigation, I discovered the following additional information.  Your Affiant reviewed the profile picture for the public account MACC_GURL.722 (S/Silva's account) and identified S/Silva as the individual in the photo.  Based on Your Affiant's training and experience it is common for Instagram account owner's to place a photo of themselves as their profile picture. As of July 6, 2021, Your Affiant reviewed all publicly available photos and videos associated with S/Silva's account.  During Your Affiants review of S/Silva's account, I observed a collection of videos labeled "infants" with the "I" replaced by a pin drop emoji, a subset of the "SBCC".  In the collection of videos, there are several recordings of known "SBCC" members claiming "S Blocc", a common reference to the "Santana Blocc Compton Crips".  Additionally, there is a video in which S/Silva is displaying hand signs used by the "SBCC" to display their affiliation to the "SBCC".  A commonly used sign and one that S/Silva uses in the video is the thumb and index finger making a 90 degree angle pointed down. This depicts a "T" which is in reference to "Tanas" short for "Santana Blocc Compton Crips".

Your Affiant observed text in the account saying "BLOCCSSK UPVK TILL MY CLOCCSSK UPVK." The spelling of "bloccssk" and "cloccssk" are the "SBCC" manner of spelling in which they add ssk to the end of words meaning "south side killers".

On or about August 3, 2021, Your Affiant reviewed a publicly available picture on the account "BITCHIMHER_", a self-admitted member of "SBCC".  In the picture posted on or around August 1, 2021, there is a picture of a known "SBCC" member with S/Silva.  On S/Silva's hand, there are the letters "S" and "B" tattooed on her fingers. I know the letters "S" and "B" to be references to "Santana Blocc Compton Crips".

In your affiant training and experience, I know that it is a sign of disrespect for a rival gang member to cross out preexisting gang graffiti and is considered encroachment on another gang's territory.  Your affiant knows this to be a sign of disrespect and is considered encroachment on another gang's territory.  Based on your affiant's knowledge of "Santana Blocc Compton Crips", if this was witnessed by a gang member, that member must take actions to retaliate and prevent any further encroachment on "Santana Blocc Compton Crips" territory by another gang.

Your affiant believes this is significant because this particular location is close to where many "Santana Blocc Compton Crips" gang members live and carry out the gang's regular business of drug trafficking, gun sales, extortion, and other crimes. "Santana Blocc Compton Crips" uses violence to protect its neighborhood and territory.  Walls and storefront from the particular location where the shooting took place are replete with "Santana Blocc Compton Crips" gang graffiti, essentially staking their claim to the area.

Your affiant believes there is probable cause to believe that the shooting of V/ victim  was committed to maintain and increase S/Silva's position within the "Santana Blocc Compton Crips". Based on the above, there is probable cause to believe that S/Silva shot V/ victim  in violation in California Penal Code 186.22(a), for the purpose of maintaining and increasing her position in the "Santana Blocc Compton Crips" enterprise, an enterprise engaged in racketeering activity.

Rev. 01-11-16 '82

LASD File #: 021-04476-2823-051                                         SW NO._____

Your Affiant knows that gang members place a high value on the guns they have in their possession and retain their firearms, or weapons, for long periods of time unless confiscated by law enforcement. Gang members often hide their firearms and ammunition at their residences.

Your Affiant knows in most instances, a firearm possessed by a gang member has been obtained by some illegal means. Gang members most often obtain their firearms through some kind of theft, usually burglary, or buy or trade for the firearm from some unknown person on the street who obtained it illegally.

Your Affiant knows gang members commonly live in, or claim, a particular geographical area which they consider their territory. These gang members commonly arm themselves with handguns and other dangerous weapons. These weapons are used against rival gang members and non-gang members in a variety of different crimes.

It is your Affiant's opinion that evidence of gang membership or affiliation with any street gang is important as it may suggest motive for the commission of the crimes including this case, and it may provide evidence which tends to identify other persons who may have knowledge of or be involved in the commission of the crime being investigated.

Your Affiant believes the firearms used in the commission of this crime could be hidden at S/Silva's residence.

Based on the above listed information, Your Affiant is seeking a search warrant for the location listed in this Affidavit. Your Affiant is confident the evidence described in this affidavit will be seized at the location to be searched. The seizure of evidence sought in this Affidavit will prove S/Silva committed the assault with a deadly weapon with a firearm thus strengthening this case against her.

Rev. 01-11-16 *82

LASD File #: 021-04476-2823-051                                    SW NO._____

## LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

### SEARCH WARRANT AND AFFIDAVIT

### NEXUS TO LOCATION #1 – 917 East Pine Street Compton, California 90221

Suspect Silva lists 917 East Pine Street, Compton, California 90221, as her mailing address per Department of Motor Vehicle records as of June 24 2016.  Using a Departmental resources, it revealed Suspect Silva's home address to be 917 East Pine Street, Compton, California 90221 as of February 12, 2018. On June 22, 2021, at approximately 2020 hours, Compton Station patrol Deputies Lopez, E #610204 and Calderon #623651 contacted S/Silva during a traffic stop and she gave 917 East Pine Street, Compton, California 90221 as her current address.

Your affiant believes the evidence sought in this search warrant affidavit will be recovered from within the aforementioned location, supporting the allegation that Suspect Silva was in violation of Penal Code section 245(a)(2) and 29800(A)(1).

Your affiant also requests that "Night Time" service be granted for the service of this search warrant based on my opinion night time service would (1) reduce the likelihood of a violent confrontation with law enforcement and or jeopardize innocent civilians that may be in the vicinity, (2) the crime being investigated is an offense committed by "Santana Blocc Compton Crips" gang members, (3) there are schools within a one mile radius of the suspect's residence, (4) service of the warrant in the early morning hours would significantly reduce the risk to children going to school, and (5) this would also increase the probability that the individual and evidence sought in this warrant will be at the residence to be searched.

I declare under penalty of perjury that the forgoing is true and correct.

(Signature of Affiant, Arthur Garcia #522452)

Rev: 01-11-16 '82

## STATE OF CALIFORNIA - COUNTY OF LOS ANGELES
## PROBABLE CAUSE ARREST WARRANT AND AFFIDAVIT IN SUPPORT THEREOF
# (AFFIDAVIT)

Your Affiant, **Detective Arthur Garcia** is employed as a peace officer for the Los Angeles County Sheriff's Department and has attached hereto and incorporates by reference official reports and records of a law enforcement agency. These reports were prepared by law enforcement officers and contain factual information and statements obtained from victims, witnesses, and others which establish the commission of the following criminal offense(s): **Assault with a deadly weapon (Firearm), 245(a)(2) and Ex-Felon in Possession of a Firearm, 29800(a)(1) PC** by the following person: **Silva, Kimberly 10/19/2000,** WHEREFORE, your Affiant requests that a warrant of arrest be issued for said person.

_____
(Signature of Affiant)

# (ARREST WARRANT)*

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER OF SAID STATE:** proof by the accompanying and incorporated affidavit having been made before me by **Detective Arthur Garcia,** I find probable cause to believe that the therein described criminal offense(s) was (were) committed by the below named and described person. Wherefore, you are commanded forthwith to arrest said person and bring said person before any magistrate in Los Angeles County, or in lieu thereof, you may release said person from custody prior to the time limitations of Penal Code Section 825 without bail or appearance before a magistrate.

The arrestee may also be released on bail in the amount of $ 85,000
**This warrant may be executed at any time during the 30 calendar days following its issuance.**

## PERSON TO BE ARRESTED

Name & aka's: **Silva, Kimberly**
Sex: Female    DOB: 10/19/2000 Race: Hispanic    Ht: 504    Wt: 125    Hair: BLK    Eyes: BRO
Residence Address: 917 East Pine Street, Compton CA 90220
Business:
CII No. 37159131    MAIN: 33681111    FBI: 6N3CRJ064    CDL: Y4283940

     **The affidavit in support of this arrest warrant is incorporated herein and was sworn to and subscribed before me:**
this   7   day of   Sep   2021, at   2:10   A.M./P.M.
**Wherefore, I find probable cause for the issuance of this arrest warrant and do issue it.**

_____        JOHN J. LONERGAN JR.
(Signature of Magistrate)        (typed or printed name)

Judge of the Superior Court   _____ S.C. _____   Judicial District

**\*Issued   pursuant to People v. Ramey (1976) 16 C.3d 263; People v. Case (1980) 105 C.A.3d 826; and Payton v. New York (1980) 445 U.S. 573,63 L. Ed.2d 639.**